GREEN B. BURNEY, administrator, &c., plaintiff in error, vs. MILTON C. BALL, defendant in error.

[1.] Any amendment of a bill, however trivial and. unimportant, authorizes a defendant, though not required to answer, to put in an answer, making an entirely new defence, and even contradicting his former.

Under the Act of 1853, a bill or answer may be amended at any stage of the proceeding in matter of form or substance; and this is the right of the party— the Court prescribing the terms upon which it shall be exercised.   The terms, however, must be such as not to amount to a negation of the right.

Burney adm'r, vs. Ball.

[2.] A witness may not only read his own deposition, it may be read to him in the presence and hearing of the jury to refresh his memory.

[3.] To constitute a good and valid gift of personal property, there must be a delivery, actual or symbolical or a writing. The acts and declarations of the donor, that he had given the property, are admissible in evidence.

[4.] Where the time when the contract is to be performed depends on some contingency, it is within the 4th section of the statute of frauds, provided the contingency cannot happen within the year; but if it may happen, it is not within the statute, whether it actually do happen or not.

[5.] If a father create a trust in favor of his daughter, which is irrevocable, and die, the title having passed out of the father in his lifetime, it cannot be enforced by his legal representative.

[6.] A charge is erroneous which withdraws from the consideration of the jury, the evidence upon which the party against whom it is given, relies for a recovery.

[7.] Whether an answer in equity be contradictory and irreconcilable is a question of fact to be determined by the jury. The effect of such an answer is a question of law, to be decided by the Court, and stands upon the same footing as the testimony of a witness, who contradicts himself.

[8.] The growing practice of multiplying requests to charge, condemned.

In Equity, from Dougherty county. Tried before Judge ALLEN, June Term, 1857.

This was a suit instituted by Green B. Burney, as administrator of Anson Ball, deceased, against Milton C. Ball, to recover certain property of his intestate. The bill alleges that the whole of the property of the intestate had gone into the possession of M. C. Ball, who during the lifetime of his father had managed all his affairs, and that Anson Ball paid little attention to them, but depended entirely on his son M. C. Ball's honesty and integrity. That in the month of March, 1847, the said Anson Ball, having before given Milton C. Ball three negroes, and intending to make up to him the advances which he had made to his other children, executed a deed of gift to him of sixteen negroes, of the value of $7,000, which with the three already given would amount in value to $10,000, double what he had advanced to any other child. That it was the intention of the intestate, Anson Ball, and was so understood by Milton C. Ball, that he

was not to receive all these negroes in his own right, but only the six negroes last mentioned in the deed, and that the other ten were to be held by him in trust, and were intended as a patrimony for the intestate's daughter Ellifair, and that this was fully recognized by M. C. Ball. The bill prayed that defendant might make a discovery of the intestate's property in his hands, and account with complainant for the same.

The defendant by his answer denied that the said Anson Ball died possessed of any real or personal property, with certain exceptions set out in the answer. He admitted that in November, 1847, but not in March, 1847, the said Anson made him a deed of gift of seventeen negroes, but denied that ten or any other number of said negroes were to be held by him in trust for said Anson, or were intended as a patrimony for the said Ellifair Ball, but that the intention of the conveyance was what its face imported, viz: to vest an absolute title to the negroes in defendant.

The complainant amended his bill, and the defendant filed an answer to the bill so amended. The complainant then obtained leave from the Court to amend his bill, by striking out the previous amendment

In his answer to the complainant's amended bill, the defendant stated various dealings of the said Anson Ball with his property, and that in January 1850, the said Anson Ball delivered to him the balance of his negroes, seven in number, and his mules and other effects, in consideration that he (the defendant) then promised to support and maintain the said Anson Ball, his wife, and daughter Ellifair. That at and previously to that time, the said Ellifair had been afflicted with palsy, and it was not then contemplated by the said Anson Ball or the defendant, that she would ever marry. That he (the said defendant,) then took possession of the property, and that the said Anson Ball disclaimed all control over it, and that he (the said defendant) had in pursuance of the agreement supported the said Anson Ball during his life,

and also his wife, and also the said Ellifair Ball, until her marriage with Tucker; and that he had made arrangements with the said Ellifair and her husband, to give them property in lieu and discharge of the agreement for her support and maintenance. The defendant admitted that under the advice of William Newsom and in ignorance of the rights of the parties, he took out temporary letters of administration on the estate of the said Anson Ball, but that he took no action under them.

Upon the trial, the complainant's counsel read the bill, answer, and replication.

Defendant's counsel then moved to amend his answer instanter, claiming the same as a matter of right without making any showing, why the matters set forth in his amended answer were not contained in his original answer. To this motion complainant's counsel objected, but the Court overruled the objection and allowed the amendment, and complainant's counsel excepted.

Complainant's counsel introduced as a witness, *William Newsom*, who testified, that at the time of his death, the said Anson, Ball had about forty negroes on his plantation. On the day of the death of Anson Ball, witness had a conversation with Milton C. Ball, who said he regretted that his father had died before he had fixed his property as he wanted it, and said the old man died without a will. Witness told Milton C. Ball that the estate would be subject to administration and advised him to take out temporary letters of administration. Before Anson Ball was buried, witness met Milton Ball and Mr. Tucker, and Milton said he would be fast enough for Burney, that Mr. Whitsett had told them what Anson Ball had said, when he went to get Judge Andrews to write a will, but he was not there, and Milton claimed it was good as a nuncupative will and talked of trying to set it up.

During the examination of this witness, complainant's

counsel, for the purpose of refreshing his recollection, proposed to read to him his depositions taken in the same cause, he not remembering the fact inquired of, to which defendant's counsel objected. The Court sustained the objection, holding that the question might be asked, but refused to allow the depositions to be read to refresh his memory, and complainant's counsel excepted.

The defendant tendered in evidence the depositions of several witnesses, to prove the declarations of Anson Ball in his lifetime, for the purpose of showing a parol gift of the property in dispute. To the admission of these, complainant's counsel objected.

The Court overruled this objection, and complainants excepted.

The jury found for the defendant, and plaintiff's counsel moved the Court for a new trial, on the following grounds:

1st. Because the Court erred in allowing the defendant after the cause had been opened to the jury, and the bill and original answer had been read to them, to put in a new answer by way of amendment, without making any special showing, why the new matters of defence set up in the amendment were not set up and relied upon in the original answer.

2d. Because the Court erred in refusing to allow complainant's counsel to read over to William Newsom, a witness sworn upon the stand, an answer of his taken in the same case, to refresh his recollection to a material point; the Court holding complainant might ask the witness the question, but refused to allow his said answers to be read to him to refresh his memory.

3d. Because the Court erred in admitting in evidence the declaration of Anson Ball, for the purpose of showing title by parol in Milton C. Ball, complainant's counsel moving the Court to exclude all such declarations.

4th. Because the Court refused to charge the jury as requested in writing by complainants counsel, that if they believed from the evidence that any parol agreement or contract had been proved between Anson Ball and Milton C. Ball, by which Milton C. Ball was to support and maintain Anson and his wife, and Ellifair his daughter, for their lives, and that in consideration thereof, was to have all of Anson Ball's property; such contract was obnoxious to the 4th section of the statute of frauds, and void; and in charging in lieu thereof, that if such contract had been proven, it was legal, valid and binding, although resting only in parol.

5th. Because the Court erred in refusing to charge the jury, as requested by complainant's counsel, that a trust can be created and proved, in chattels, by parol, and if the jury believe from the evidence, that there were ten or any slaves included in the voluntary deed of the 1st of November, 1847, and that it was understood at the time, that Milton, was to convey them back at any time after to Anson Ball, or any portion of them, so that he might give them to Ellifair, then complainant is entitled to recover that number; and in charging in lieu thereof, that notwithstanding a trust in chattels can be created and proved by parol, yet if there was any such contract or agreement it passed the title out of Anson Ball into M. C. Ball, and the complainant was not entitled to recover that property, for that was a matter between Milton C. Ball and his sister Ellifair.

6th. Because the Court erred in refusing to give in charge the 6th written request of complainant's solicitors as made, to-wit: " That when the statements of a party sometimes claiming and sometimes disclaiming title are in evidence, proof of delivery is essential, and that if the jury believe from the evidence that Anson Ball intended to give all his property outside the several deeds to Milton C. Ball, and Ellifair Ball, and died without consummating that intention, that title to all that property is in the complainant, and he is entitled to recover its value; and that in ascertaining the

intention of Anson Ball they ought to consider Milton Ball's statements, if made, that he regretted his father's dying before he had fixed the property; Milton's taking out temporary administration; as well as all the statements of Anson Ball claiming and disclaiming the property:" and in lieu of said request, charging the jury that they must look to the whole evidence for the purpose of ascertaining the intention of the donor.

7th. The Court erred in refusing to charge the jury as requested by complainants counsel, "that when an answer is contradictory and in conflict with itself the jury must reconcile it if possible without imputing crime to the defendant, and if irreconcileable they ought not to rely upon it, especially when it is in evidence;" but observed he refused to charge it because the jury were judges of that fact.

8th. Because the Court refused to charge the jury as requested by complainant's solicitors: "That if they believe from the evidence that Milton C. Ball was in possession of the property at the time of the alleged transfer or gift, then in order to have the title perfected in him to the property not included in the deeds, Anson Ball should have had the possession and have redelivered it actually or symbolically to Milton or have executed a deed;" and in charging in lieu thereof, that when the donee was in possession at the time of the alleged gift, a delivery must be proved, and that the North Carolina case relied on by complainant's counsel was not analogous, for the reason that in that case, the donee came into possession of the property as a loan; that delivery was essential to a parol gift, and that such delivery might be shown by circumstances.

9th. Because the Court erred in charging the jury in conclusion of his charges, the second written request in writing of defendant's solicitors, to-wit: "That if they believed from the evidence, that Anson Ball disclaimed all title in his lifetime to the property in controversy in favor of Milton C. Ball, and at the time of such disclaimer M. C. Ball was in

possession thereof, exercising acts of ownership and control over said property, the administrator Burney cannot recover;" and in further charging "·that if Anson Ball by his declarations disclaimed property in himself, the jury must find for the defendant."

10th. That the Court erred in giving in charge to the jury the third written request of defendant's solicitors, to-wit: "That if any of the property which passed from Anson to Milton C. Ball, now the subject of dispute, had been coupled with a trust for the benefit of Ellifair Ball (now Mrs. Tucker,) that as to such property, the legal estate is in M. C. Ball, and the equitable in Mrs. Tucker, and *that Burney* cannot re-cover it as a part of the estate of Anson Ball;" there being nothing in the pleadings or evidence to authorize or justify said charge.

11th. Because the verdict of the jury was contrary to law and evidence.

12th. Because the verdict was contrary to the evidence, and without evidence.

13th. Because the verdict was contrary *to* the charge of the Court.

The motion for a new trial was overruled by the Court on all the grounds taken, and the complainants counsel excepted.

VASON & DAVIS; and BAILEY & SCARBOROUGH, for plaintiffs in error.

LYON, WARREN & WARREN, *contra*.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in allowing the amended answer to be filed in this case? It seems that the original bill had been amended. The case was transferred, by consent of parties, to the appeal docket. The complainant filed an amendment to the bill, April, 1855. At the June Term, 1856, com-

plainant further amended his bill by striking out and withdrawing the first amendment, which the Court held he had a right to do under the Act of 1853–4. The answer to the amended bill, and which is the subject-matter of this exception, was actually filed June 11th, 1856, although not formally offered as an amendment until the case came on to be heard, twelve months thereafter.

We apprehend there can be no doubt of the defendant's right to file this amended answer to the complainant's amended bill. The complainant could compel it. It was the defendant's privilege to file it.

Mr. Daniel says, that "any amendment of a bill, however trivial and unimportant, authorizes the defendant, though not required to answer, to put in an answer, making entirely a new defence; and contradicting his former answer." (1 *Daniel's Ch. Pr.* 468; *Trust and Fire Ins. Co. vs. Jenkins*, 8 *Paige*, 589.) Apart, then, from the Act of 1853–4, the right of the party to make this amendment is indisputable.

[2.] While Mr. Newsom, a witness in behalf of the complainant, was under examination, a question was propounded to him as to some material fact, which not recollecting, counsel for complainant proposed to refresh his memory by reading to him a part of his deposition taken in this case. The Court refused to allow the deposition to be read for this purpose; and this constitutes the second exception upon which error is assigned.

Upon what ground the objection was put by the defendant's solicitor, and sustained by the Court, does not appear. The argument before us concedes that the witness might have been permitted to read his own deposition to refresh his memory; and the rule of evidence is well settled, that he may. (1 *Greenl. on Ev.* 436, *and notes.*) But it is insisted that it cannot be read to him in the presence and hearing of the jury. Had the objection below been put upon this ground, it might probably, in this particular case, have been obviated by handing the witness his own deposition and permitting him to

read it. But there are cases where this cannot be done. The witness may be blind, or so illiterate as to be unable to read, and we are not prepared to hold that his memory may not be refreshed by his having his sworn testimony read to him. His interrogatories were sued out, executed and returned under the statute, and but for his accidental attendance on Court, the whole of the depositions would have been read as evidence to the jury. It is rather a sharp practice, we think, not to allow a portion of such proof to be read to the witness in the presence of the jury to refresh his memory.

[3.] Was the testimony of Douglas, Breedlove, Mrs. Phebe Ball, Dr. Dickerson and others, admissible for the purpose of proving by parol, as it is expressed in the bill of exceptions, a gift of the property in dispute?

This proof relates to the acts and declarations of Anson Ball, as to the gift of the property to his son, Milton Ball. Our opinion is, that the declarations of the donor, that he had given, are always admissible in evidence in cases of this sort. We have heretofore held, and still hold, that they are insufficient of themselves to establish a gift. To constitute a good and valid gift, there must be a delivery, actual or constructive—or as it is termed sometimes, symbolical—or a writing. A delivery may be inferred from the acts of the donor, which go to show that he has parted with the dominion over the property; (10 *Johns. Rep.* 302) as hiring out a slave in the name of the donee; lending money in the donee's name, drawn upon a lottery ticket, upon which the donor wrote the donee's name, declaring that he had given the ticket to the donee. These cases will suffice as an illustration of the rule.

[4.] Was the agreement between Milton C. Ball and Anson, his father, to the effect that in consideration that he, Milton, would support his father, mother and youngest sister, Ellifair, during their lives, that he should have all the residue of his father's slaves and other property, good, under the 4th section of the 29th Charles II, commonly called the statute of frauds? Neither the Courts in England nor in this

country have concurred as to the proper construction to be put upon this section. It says, no action shall be brought whereby to charge any person, "upon any agreement which is not to be performed, *within* the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party, to be charged therewith, or some other person thereunto by him lawfully authorized."

In 1762, a short time before the English common and statute law took effect under our adopting statute in Georgia, the case of *Fenton vs. Embler's ex'or* (*3 Bur. Rep.* 1278) came before the King's bench in England. The contract was, May, in consideration that the plaintiff would be and become the house-keeper and servant of the said May, and take upon herself the care and management of his family, and perform the said services as *long as it should please the respective parties*, the testator promised to pay wages to the plaintiff, at and after the rate of £6 per year; and also by his last will to bequeath to the defendant, a legacy or annuity of £16 per annum, for and during the term of her natural life.

The declaration alleged performance on the part of the plaintiff, and claimed wages for three years and fifty-nine days. The agreement in parol was admitted, and the only question was, whether it should not have been in writing? A case was cited from the exchequer in 1726, to the effect that a parol promise to be performed, which may or may not happen within the year, after the making, is void within the statute of frauds.

Lord Mansfield said, that this case, from the exchequer, which he thought could not have been rightly reported, was the only one which could make any doubt. That by all the other precedents, it seemed to be well settled, and the other judges concurred.

Such then was the construction put upon this clause of the

statute, probably in May, 1776. For the case in Burrows was a much stronger case than the one at bar.

The current authority in this country is, that where the time, when the contract to be performed depends on some contingency, it is within the statute, if the contingency cannot happen within the year. But if it may happen, it is not within the statute, whether it actually do happen or not. (2 *Story on Contracts* § 1015, *O. and notes* 1 *and* 2; *Moore vs. Fox*, 10 *Johns. Rep.* 254; *Bennett vs. Hull, Ib.*, 364.)

In the case before us, is full performance on one side, and the contingency may have happened within the year, to-wit: the death of the party to be maintained.

[5.] We think the court was right in ruling, that if a trust had been created in favor of Ellifair Ball, that it was to be enforced at her instance, and not by the administrator of Anson Ball's estate. The title had passed out of Anson Ball in his life time, and was irrevocable.

[6.] We think the Court erred in charging the jury at the request of the defendant's solicitor, that if they believed from the evidence that Anson Ball disclaimed, in his life time, all title to the property in controversy, in favor of Milton C. Ball, and at the time of such disclaimer, Milton C. Ball was in possession thereof, exercising acts of ownership and control over said property, the administrator, Burney, could not recover. And in further charging them, if Anson Ball, by his declarations, disclaimed property in himself, the jury must find for the defendant.

This charge took from the jury the right to consider the entire testimony in favor of the plaintiff. It withheld from them all that was said by Milton C. Ball, at the death of his father. He knew better than any other living person who was the owner of this property. He expressed his regret that his father had died before he "fixed his property." He stated that his father had died without a will, and took out temporary letters of administration, saying he would be fast enough for Burney; (the complainant and his brother-in-law.) That

Mr. Whitsett had told him what Anson Ball had said when he went to Stakeville to get Judge Andrews to write his will, but that he was not there, and Milton C. Ball claimed that it was good as a nuncupative will, and talked of trying to set it up as such. We repeat that this and all other proof going to show that the father, by the conduct and declarations of the son, had not parted in his life time, with this property, was improperly excluded from the jury by the broad and sweeping charge of the Court.

[7.] As to the refusal of the Court to make the charge, that if the answer of the defendant was contradictory and irreconcilable, one part with another, they ought not to believe it; the Court gave at least an unsatisfactory reason for refusing it, namely, that the jury were the judges of the fact, of whether this be so. Very true; they must determine whether the answer be contradictory and irreconcilable. But the point is, admitting this to be so, what is the rule of law, as to the credence that should be given to such an answer? The principle will be found to be pretty clearly stated in 4 *Phillips on Evidence, by Cowen & Hill, part II, page* 50, *note* 33; 10 *Johns. R.* 424, *and* 11 *Wend. Rep.* 240, 252, 253, 343, 348 *and* 349.

But the repugnance attributed to the answer is not very patent. There is, it is true, more amplification and particularity in the amended answer, but the discrepancy is not very obvious.

[8.] We have intentionally overlooked some of the exceptions in the record, for the simple reason that they are too attenuated and intangible, to amount to anything practical. I regret to see that this is a growing evil in the trial of causes. Instead of asking the great principles of the law, which control the case to be given in charge to the jury, there is a repetition, and a hair-splitting, which are as annoying to a Court as they are unprofitable to the jury. And it is this, amongst other things, which is prolonging to so alarming an extent the terms of this Court. For all these infinitesimal

*nothings* are incorporated in the bill of exceptions, and are argued and re-argued here to the great and unnecessary consumption of time that might be much better occupied.

We have examined carefully the case in 2 *Iredell's Law Reports,(page* 361) mainly relied on by counsel for the plaintiff in error, to exclude the acts and declarations of Anson Ball, as to the gift of the property in dispute, to his son. And it is a strong case on his side. We will dismiss it for the present with this single remark, that while we have no fault to find with the judgment of the Court upon the actual case, we feel constrained, by a regard to consistency and every other consideration, to dissent from the great Judge who delivered the opinion in that case, as to some of the doctrines which he maintains, as to the parol gift of slaves.

Judgment reversed.