42780. KLAG et al. v. HOME INSURANCE COMPANY.

Argued May 1, 1967—Decided October 19, 1967—
Rehearing denied November 17, 1967—

*Nall, Miller, Cadenhead & Dennis, Theodore G. Frankel, Thomas S. Carlock, Alston, Miller & Gaines, Lloyd T. Whitaker, Kenneth W. Gilchrist,* for appellants.

*Neely, Freeman & Hawkins, Edgar A. Neely, Jr., Joe C. Freeman, Jr., Thomas H. Harper, Jr.,* for appellee.

PANNELL, Judge. Only Headnote 3 requires elaboration.

Pretermitting the question of whether grounds 6, 7, and 9 of the demurrers sustained were insufficient to present any question for decision (a) because the demurrers do not point out wherein the "petition" shows it "has not satisfied the provisions

of the Statute of Frauds" or (b) because the Statute of Frauds referred to in the demurrers is described only as to title, section and paragraph of "Ga. Code Anno.," etc., and is therefore defective because no law of the State of Georgia or the statute of frauds of the State of Georgia is sufficiently set forth (see *CTC Finance Corp. v. Holden,* 221 Ga. 809, 811 (147 SE2d 427); *Parrott v. Fletcher,* 113 Ga. App. 45, 46 (3) (146 SE2d 923)), we are of the opinion that the contract alleged in the petition does not violate the Statute of Frauds of the State of Georgia in any of the particulars claimed.

The provisions of the Statute of Frauds of this state (*Code* § 20-401 (2, 5)) insofar as applicable to the questions here involved are as follows: "To make the following obligations binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized, viz.:  . . .

"2. A promise to answer for the debt, default, or miscarriage of another. . .

"5. Any agreement . . . that is not to be performed within one year from the making thereof."

The appellee, in its brief, has practically conceded that demurrer number 9, involving Paragraph 5 of *Code* § 20-401, was improperly sustained. With this we agree. See in this connection *Henderson v. Touchstone,* 22 Ga. 1; *Burney v. Ball,* 24 Ga. 505 (4); and *Alderman v. Chester,* 34 Ga. 152 (2), ruling that possibility of performance within one year dispenses with the necessity that the contract be in writing to be enforced under this particular paragraph of the Statute of Frauds.

We come next then to the question whether the alleged contract was a contract by the insurer to answer for the debt, default, or miscarriage of the insured.

It appears to us that the agreement here sued upon was not, on the part of the insurer, a promise to answer for the debt, default, or miscarriage by another required by the Statute of Frauds to be in writing. The insurer's contract is the promise to answer for the debt, default, or miscarriage of the insured as provided in the terms of the policy. That contract is in writing. See Brown v. Noland Co. (Ky. App. 1966) 403 SW2d

33; Ortis v. Travelers Ins. Co., 2 Mich. App. 548 (140 NW2d 791) (1966)); Regus v. Schartkoff, 156 Cal. App. 2d 382 (319 P2d 721) (1958). We quote from the case of Ortis v. Travelers Ins. Co., supra: "Travelers did agree in its written policy with [its insured] to pay certain of [its insured's] obligations which might arise in the future up to the policy limits. Travelers' oral agreement with the plaintiff was within the limits of its written agreement with [its insured]. Furthermore, Travelers' was settling not only [its insured's] potential liability but its own possible obligation to pay and its own duty to defend [its insured]." The insurer has a financial interest in the claim against the insured even though it only becomes liable to the third party when legal liability is established .against the insured, and where the insurer agrees to settle its potential liability as well as the potential liability of the insured, the oral promise by the insurer to settle or pay the claim against the insured is an original undertaking and need not be in writing. See *Ferst's Sons & Co. v. Bank of Waycross,* 111 Ga. 229 (36 SE 773). As was said by the California court in Regus v. Schartkoff, supra: "The leading or main object of [the insurance adjuster] was not to become surety or guarantor for [their insured], but to subserve the purpose and interest of Allstate. Therefore, the promise was an original one and valid, though oral." See also *Evans v. Griffin,* 1 Ga. App. 327 (57 SE 921); *Holt v. Empire Tire &c. Co.,* 33 Ga. App. 723 (127 SE 803); *Palmetto Mfg. Co. v. Parker,* 123 Ga. 798 (51 SE 714); *Harris v. Jones,* 140 Ga. 768 (79 SE 841); *Fuller v. Holsomback,* 42 Ga. App. 483 (156 SE 460). This is in accord with 3 Williston on Contracts (3rd Ed.), § 477, p. 453 et seq., which reads in part as follows: "Where a third person promises a creditor to discharge a debt due from another to the latter, the arrangement may conceivably take one of three forms: . . .

"2. The new promisor may, with the concurrence of the original debtor and on his behalf, make his promise in substitution for the obligation of the original debtor. This arrangement when accepted by the creditor will effect a *novation.*

"3. The new promise may be made as in 2, except that the original debtor does not assent thereto. As a debtor's obligation

can be discharged at law only by himself or by his authorized agent such an agreement does not create a legal novation; but since a creditor who had agreed to the substitution would not be allowed by equity to enforce his claim against the original debtor, the transaction may be called an equitable novation. If the agreement is of the second kind, and the debt of the party primarily liable is thereby *discharged, the new promisor who thus assumes the obligation in consideration of the discharge of the original debtor, is bound, though his promise is oral.* The discharge of the old debt at the request of the new promisor is as adequate a *quid pro quo* for the creation of a new original debt as the payment to the creditor of an amount of money equal to the old debt would be. . .

"The basis for the rule is that the very consideration of the second promise, the necessary operation of the new agreement, is to discharge the first liability at the moment of creating the new one, so that the creditor cannot be said to have two persons charged for the same debt; *and if there is only one person liable, there can be nothing to which his promise can be said to be collateral.* There is a new, original, and independent engagement, founded upon the merger and extinguishment of the pre-existing debt or demand and operating by way of novation and substitution. To support the transaction, as an original undertaking, there is no necessity for an agreement, express or implied, that the debt is to be assigned to the promisor, or that he should have funds of the original debtor in his hands to reimburse himself; and *the promise, to render it valid as an original undertaking, does not require a consideration, independent of the discharge of the original debtor, moving between the promisor and the promisee and beneficial to the promisor."* (Emphasis supplied.)

This court in *Langford v. Milwaukee Ins. Co.,* 101 Ga. App. 92, 94 (113 SE2d 165) said in reference to such an agreement, "While it remained executory such a parol agreement was unenforceable as within the Statute of Frauds, it being a promise in parol to answer for the debt, default, or miscarriage of another *(Code* § 20-401 (2)), and also a promise to revive a debt barred by the statute of limitations *(Code* § 20-401 (6))." It

is our opinion that the view heretofore expressed above is the sounder view than that expressed in the *Langford* case, and is in accordance with prior decisions of this court; the ruling in the *Langford* case therefore should not be followed. Whether the result in the *Langford* case was otherwise correct because the promise was one to revive a debt barred by the statute of limitation, we do not decide.

*Judgment reversed. Bell, P. J., and Whitman, J., concur.*