In the Matter of GREENSBORO LUMBER COMPANY, Debtor.

Paul and Gail VANDIVER, Movants,

v.

GREENSBORO LUMBER COMPANY, Debtor,

and

Joy WEBSTER, Trustee, Respondents.

Bankruptcy No. 90–30905.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Dec. 31, 1992.

Frank A. Lightmas, Jr., Atlanta, GA, for Greensboro Lumber Co.

Richard M. Jones, Jr., Atlanta, GA, for Paul Vandiver and Gail Vandiver.

Joy Webster, Atty., Office of U.S. Trustee, Macon, GA.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Paul Vandiver and Gail Vandiver, Movants, filed their "Motion for a Hearing to Set a Value on a Claim" on March 17, 1992. A hearing was held on December 15, 1992. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Greensboro Lumber Company, Debtor, provided group health insurance for its employees. The coverage began after a worker had been employed for one year. The insurance carrier was Blue Cross Blue Shield of Georgia (hereinafter "Blue Cross"). Mr. Vandiver began working for Debtor in March of 1987 and enrolled for coverage when he became eligible. He selected the "family plan," which provided coverage for his wife, Mrs. Vandiver. Debtor gave Mr. Vandiver a letter dated

February 9, 1989, stating that he had family coverage.

Debtor later required that employees pay, through payroll deduction, a portion of the insurance premium. Debtor began deducting $17.50 per week from Mr. Vandiver's wages on May 2, 1989. The deductions continued until September 12, 1989.

Debtor sent a cashier's check dated July 17, 1989, to Blue Cross for the June 1989 premium. The letter accompanying this check stated "within the next few days we should be able to remit the July premium." Debtor failed to pay the premiums for July and subsequent months.

Mrs. Vandiver had problems with her back and received treatment at Greensboro Hospital in May and June of 1989. She was referred to a hospital in Athens for additional medical treatment. She had surgery on September 13, 1989. The last insurance premium deduction from Mr. Vandiver's wages occurred on the day before his wife had surgery.

Debtor's letter, verifying that the Vandivers had family coverage, was shown to both hospitals when Mrs. Vandiver was admitted. Mr. Vandiver testified that Debtor's representative told him that his wife had coverage when she entered Greensboro Hospital in June.

Seven to nine days after Mrs. Vandiver's surgery, Blue Cross telephoned the Vandivers and stated their health insurance had been cancelled. Neither Blue Cross nor Debtor had previously notified the Vandivers that coverage had been cancelled. Mr. Vandiver discussed this with Thomas A. Gutherie, the president of Debtor, and his secretary. Mr. Vandiver was told that Debtor "would take care of it" and "not to worry." Blue Cross refused to pay Mrs. Vandiver's medical expenses incurred during June of 1989 and subsequent months.

Blue Cross sent letters dated September 8 and 12, 1989, to Debtor, which provided, in part:

A NOTICE WAS MAILED TO YOU INFORMING YOU THAT YOUR CONTRACT WOULD BE CANCELLED IF YOU DID NOT PAY YOUR PAST DUE PREMIUMS WITHIN 15 DAYS OF THE DATE OF THE NOTICE. TO DATE, WE HAVE NOT RECEIVED YOUR PAYMENT. YOUR GROUP INSURANCE PROGRAM HAS BEEN CANCELLED FOR NON-PAYMENT EFFECTIVE 07/01/89.

Blue Cross sent Mr. Vandiver a letter dated September 26, 1989, stating that insurance coverage had been cancelled effective June 1, 1989. Debtor deducted $175 from Mr. Vandiver's wages for his portion of the insurance premium after the effective date of cancellation. Debtor used the deductions to pay debts. Mr. Vandiver went to work for another employer in January of 1990.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on November 5, 1990. The Vandivers filed a proof of claim in the amount of $16,000. No supporting documents or medical bills were submitted with the proof of claim.

Mrs. Vandiver testified that she has medical expenses in the amount of $18,000 to $20,000 that Blue Cross refused to pay. Copies of the bills were not introduced at the hearing.[1] Greensboro Hospital has turned over the Vandivers' account to a collection agency. Mrs. Vandiver contends that she has suffered emotional distress from having to deal with the collection efforts. Her medical condition is not expected to improve, and she may need more surgery. She continues to receive medical treatment and she has been unable to work for some time. Mrs. Vandiver is receiving Social Security disability. Debtor offered no evidence to dispute the amount of unpaid medical expenses claimed by the Vandivers.

The Vandivers contend that Debtor is responsible for the unpaid medical expenses because Debtor caused the insurance coverage to be cancelled by failing to pay the premiums. Debtor contends the Vandivers' claim should be limited to the $175 deducted from Mr. Vandiver's pay.

1. One medical bill from Athens Pathology Associates in the amount of $125 for services rendered on September 13, 1989, was introduced at the hearing.

Debtor contends that Mr. Vandiver, as an employee at will, had no right to expect continued insurance coverage.

■ "Under Georgia law, an employer has a fiduciary duty to notify his employees of all changes in the scope of any group insurance coverage which may be made available to them in connection with their employment." *Calhoun v. Kut–Kwick Corp.*, 172 Ga.App. 511, 323 S.E.2d 699, 700 (1984).

In *Dinnan v. Totis*,[2] Totis was enrolled in a group health insurance plan that was paid for by his employer. After he was injured in a motorcycle accident, Totis learned that the insurance policy had been cancelled because his employer had failed to pay the premiums. The Georgia Court of Appeals stated:

The applicable principles may be summarized as follows. Fringe benefits are an inherent part of compensation. Payments by employers of employees' pension contributions, and insurance policies, both life and health, have all become vital ingredients of employment. Such payments can no longer be considered as gratuities or voluntary since they are essential elements of most compensation arrangements in that they benefit both the employer and the employee....

. : . .

We, therefore, hold that even though the employee in this case did not make direct contributions to the premium payment, there was a basis for finding the employer breached a duty to its employee when it failed to make the premium payments and allowed the policy to lapse without giving reasonable notification to its employee concerning the lapse. For this reason, a verdict against defendant corporation was authorized by the evidence.

283 S.E.2d at 324.

In *Dawes Mining Co. v. Callahan*,[3] Callahan participated in Dawes' group health insurance plan. Callahan and Dawes each paid one-half of the premium. Without consulting the employees, Dawes changed coverage to another insurance company. The new policy excluded payment for pre-existing conditions until the policy had been in effect for a certain amount of time. Within the excluded period, Callahan's wife was hospitalized for a pre-existing condition and the insurance company refused payment. Callahan sued Dawes for medical expenses incurred. The jury awarded those expenses. Dawes appealed. The Supreme Court of Georgia affirmed and stated:

Where, as here, the employee contributes toward payment of the premium either the employee is a party to the insurance contract or has a contract with the employer by which the employer agrees, for the consideration paid by the employee, to provide insurance coverage to the employee. We need not finally resolve the status of a contributing employee because we find that the relationship of the employee to the insurer is not controlling here. Rather, it is the status of the employer and the relationship between the employer and the employee which is controlling.

272 S.E.2d at 269.

The court continued, stating:

We therefore hold that when changing a group policy insuring contributing employees and obtaining the applications of those employees, the employer acts as an agent of the employees, *Thigpen v. Metropolitan Life* [57 Ga.App. 405, 195 S.E. 591 (1938) ], supra; *Blaylock v. Prudential* [84 Ga.App. 641, 67 S.E.2d 173 (1951) ], supra, and as such is under a duty to notify the employees of differences between the old and new policies and of any rights the employees may have to continue the old insurance on an individual basis. We hold further that where this duty is breached, an employee can recover such damages as result from the difference in coverage.

Cases from other jurisdictions show that the issue of whether an employee is entitled to notice of policy modification or

**2.** 159 Ga.App. 352, 283 S.E.2d 321 (1981).

**3.** 246 Ga. 531, 272 S.E.2d 267 (1980).

cancellation remained unsettled for many years (see 55 A.L.R. 1245, 1248, and 68 A.L.R.2d 249, 266–274 for discussion). The weight of authority now is that notice is required. See 1 Appleman, Insurance Law & Practice (Supp.) 64, § 43. 272 S.E.2d at 270–71.

The court then stated:

As noted in 68 A.L.R.2d 249, 269, the majority of cases involving contributory policies hold that the employer may not, without reasonable notice to the employee, cancel or modify a group policy so as to deprive the employee of rights under that policy. Although this rule has never been expressly adopted by the Georgia courts, it is consistent with the dividing line established in *Thigpen v. Metropolitan Life*, supra. The case of *Johnson v. Metropolitan Life Ins. Co.*, 52 Ga.App. 759, 184 S.E. 392 (1936), was a suit against the insurer and the statement therein that the employee was not entitled to notice from the employer (52 Ga. App. at 764, 184 S.E. 392) was dicta.

272 S.E.2d at 272.

Finally, the court stated:

Though not before us in this case because the insurer is not a party to this action, several cases have held the insurer liable for failure to give notice to the employee.

272 S.E.2d at 272, n. 7.

In *The Woodman Co. v. Adair*,[4] Adair's employment contract provided that his employer would pay the premium for the group health insurance. The insurance policy provided that Adair could convert to an individual policy upon termination of employment. When Adair's employment was terminated, his employer told him that the group policy would continue in effect for thirty days. Adair's wife incurred medical expenses during the thirty-day period. After Adair was informed that no coverage existed, he sued his employer for breach of an implied contract. The Georgia Court of Appeals stated:

The case sub judice differs somewhat from the *Dawes* case in that when the employee was terminated and upon inquiry as to coverage he was advised that his medical and hospitalization policy would continue for 30 days, albeit the plan required that if he decided to continue insurance a converted policy could be obtained from the insurance carrier. The employer failed to so advise and thus breached the implied contract, making it liable under the circumstances.... When a change occurs in the group health insurance policy provided for the employees as a part of the consideration of employment, an employer can be sued by his employee for breach of an implied contract when it erroneously advises him that he has coverage under the policy, yet the policy required that he obtain a converted policy in order to have it continue. The evidence authorized the trial court to find in favor of the plaintiff.

294 S.E.2d at 580.

■ Debtor contends that it was under no obligation to maintain insurance coverage because the obligation was not reduced to writing. Debtor relies upon Georgia's version of the Statute of Frauds,[5] which provides:

To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him:

(1) A promise by an executor, administrator, guardian, or trustee to answer damages out of his own estate;

(2) A promise to answer for the debt, default, or miscarriage of another;

(3) Any agreement made upon consideration of marriage, except marriage articles as provided in Article 3 of Chapter 3 of Title 19;

(4) Any contract for sale of lands, or any interest in, or concerning lands;

(5) Any agreement that is not to be performed within one year from the making thereof;

---

4. 164 Ga.App. 603, 294 S.E.2d 579 (1982).

5. O.C.G.A. § 13–5–30 (Supp.1992).

(6) Any promise to revive a debt barred by a statute of limitation; and

(7) Any commitment to lend money.

O.C.G.A. § 13–5–30 (Supp.1992).

"[Under subsection (5) the] possibility of performance within one year dispenses with the necessity that the contract be in writing to be enforced under this particular paragraph of the Statute of Frauds." *Klag v. Home Insurance Co.*, 116 Ga.App. 678, 158 S.E.2d 444, 451 (1967), *cert. denied* (1968).

It is clear that Debtor's obligation to provide insurance coverage could have been performed within one year. The Court is persuaded that the Statute of Frauds does not bar enforcement of Debtor's obligation.

Blue Cross cancelled the group health insurance because Debtor failed to pay the premiums. Debtor continued to deduct Mr. Vandiver's portion of the premium and used these deductions to pay its debts. The Vandivers were not notified that insurance coverage had been terminated until after they incurred medical expenses. The Court is persuaded that the Vandivers have a claim against Debtor in the amount of the unpaid medical expenses.[6]

The Vandivers filed a proof of claim in the amount of $16,000. Mrs. Vandiver testified that she has unpaid medical expenses in the amount of $18,000 to $20,000. Debtor offered no evidence to dispute the amount of unpaid medical expenses claimed by the Vandivers. The Court is persuaded that the value of the Vandivers' claim should be set at $16,000, the amount of the Vandivers' proof of claim.

█ The Vandivers ask the Court to award damages for emotional distress that Mrs. Vandiver allegedly suffered from having to deal with the collection agency. Debtor failed to pay the insurance premium because it had more debts than income. The Vandivers cite no authority allowing a recovery for emotional distress under the facts presented. The Court is persuaded that it should deny this portion of the Vandivers' request.

An order in accordance with this memorandum opinion will be entered this date.

## ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the "Motion for a Hearing to Set a Value on a Claim" filed on the 17th day of March, 1992, by Paul Vandiver and Gail Vandiver, Movants, hereby is granted; and it is further

ORDERED that the value of Movants' claim hereby is set at $16,000; and it is further

ORDERED that the request by Movants for an award of damages for emotional distress hereby is denied.

SO ORDERED.

6. The Vandivers do not contend that Blue Cross is obligated to pay the medical expenses. The Court expresses no opinion on that issue. *See Clements v. Continental Casualty Insurance Co.*, 730 F.Supp. 1120, 1123 (N.D.Ga.1989) ("it appears that Georgia law would follow those cases holding that an employee under a group insurance policy who pays or attempts to pay her premium contribution to her employer effectively tenders payment to her insurer and cannot lose her coverage for failure [of her employer] to pay [the insurer]").