**UCSF–STANFORD HEALTH CARE**
f/k/a Stanford Health Services,
Plaintiff,

v.

**HAWAII MANAGEMENT ALLIANCE BENEFITS & SERVICES, INC.** and Hawaii Management Alliance Association, Defendants.

No. Civ. 98–00648DAE.

United States District Court,
D. Hawaii.

July 22, 1999.

Peter A. Lee, Honolulu, HI, Tracy D. Swann, Joy Y. Stephenson, George Colman, Vincent A. Acquisto, Tracy A. Wade, Alyssa B. Klausner, Stephenson Acquisto & Colman, Burbank, CA, for UCSF–Stanford Health Care.

Stuart T. Feeley, Reinwald O'Connor Marrack, Hoskins & Playdon, Honolulu, HI, Ellen Godbey Carson, Alston Hunt Floyd & Ing, Honolulu, HI, Alexander F. Stuart, Willoughby, Stuart, & Bening, San Jose, CA, for Hawaii Management Alliance Benefit & Services, Inc.

Ellen Godbey Carson, Alston Hunt Floyd & Ing, Honolulu, HI, for Hawaii Management Alliance Association.

## AMENDED ORDER

DAVID ALAN EZRA, Chief Judge.

*AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

The court heard Defendants' Motion on July 6, 1999. Alyssa Klausner, Esq., and Peter Lee, Esq., appeared at the hearing on behalf of Plaintiff; Bill Hunt, Esq., and Lea Hong, Esq., appeared at the hearing on behalf of Defendants. After reviewing the Motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

### BACKGROUND

This case involves a dispute between an insurer and a health care provider over the insurer's liability for medical services performed by the health care provider. Plaintiff UCSF–Stanford Health Care ("Plaintiff") brings this action against Defendants Hawaii Management Alliance Benefits & Services, Inc. and Hawaii Management Alliance Association ("Defendants"), based on Defendants' refusal to compensate Plaintiff for treatment it provided to a third party, Ye Sun Chon ("Chon").

On March 25, 1997, Chon completed an Employee Application Form seeking to obtain health insurance from Defendants. In the form, Chon was asked several questions regarding both her employment status and medical history. Chon responded that she was employed by Holiday Shoe Repair ("Holiday"), a company owned by her brother-in-law. Chon also indicated that she was not receiving treatment at the time she completed her application. Defendants contend that Chon's answers to these questions were false, and were intended to induce Defendants to provide insurance coverage for expensive procedures relating to a brain tumor she had developed in 1992.

On April 1, 1997, allegedly in reliance on the misrepresentations in Chon's application, Defendants added Chon to the list of insureds from Holiday. The policy contained specific provisions relating to conditions regarding continuing eligibility as well as termination of coverage. With respect to eligibility, the policy provided that Chon would be entitled to coverage "on the first of the month following a minimum of twenty (20) hours of employment for four (4) consecutive weeks." The policy further explained that eligibility would continue only if the employee "remains actively working and maintains a minimum of twenty (20) hours of employment per week."

With respect to termination, the policy provided that "coverage ends the last day of the calendar month in which ... 1. You fail to work at least the required number of hours; 2. You stop working for a Participating Employer; ... 5. You cease actively working as defined in The Plan." Policy at 8, attached as Exhibit B to Defendants' Motion for Summary Judgment. The Policy defines "actively working" as "performing all regular duties of ... occupation for a Participating Employer at least seventy (70) hours a month."

On June 10, 1997, Plaintiff contacted Defendants' utilization review department, informing them of Chon's condition and the pending claim for coverage. At that time, during their telephone conversation, Defendants authorized the services to be performed and certified the requested treatment as medically necessary. They then faxed the authorization form to Plaintiff.

On June 18, 1997, Plaintiff again contacted Defendants to confirm Chon's eligibility for coverage. At that time, Defendants again informed Plaintiff: 1) Chon was an insured and covered by Defendants; 2) Chon was eligible for benefits; 3) Chon's policy became effective April 1, 1997; 4) Chon had a $2 million lifetime maximum benefit; 5) Chon had a $100 deductible, which had been met; 6) Defendants would pay "80% CTR"; and 7) Chon had an Out–of–Pocket co-payment of $1,500.00, of which $500 had been met.

Again, Defendants did not indicate at anytime during the phone call that Chon's eligibility was being investigated, and actually affirmatively represented to Plaintiff that there were no pre-existing condition exclusions or limitations on Chon's policy.

On June 19, 1997, Plaintiff informed Defendants that the scheduled day of treatment had been changed, and Defendants responded by faxing pre-certification forms which indicated that Chon was an insured, and included information regarding deductibles and coverage limits. Also included with the pre-certification forms were disclaimers regarding the effect of pre-certification:

> Pre–Certification is for the sole purpose of reviewing medical necessity of the recommended hospitalization, procedure, treatment, therapy or rehabilitation. Pre–Certification is not a guarantee that charges are covered under the Plan. All charges submitted to [Defendants] are subject to eligibility and all plan provisions, regardless of precertification.

Pre–Certification Forms, attached as Exhibits C & D to Defendants' Motion for Summary Judgment.

Allegedly in reliance on Defendants' precertification of Chon, on July 1, 1997, Plaintiff admitted Chon for surgery to remove a brain tumor. On June 24 and July 1, 1997, Plaintiff performed two separate brain surgeries, and in August of that year, after a period of recovery, Chon was released. For the services it provided to Chon, Plaintiff submitted interim inpatient bills to Defendants on July 24, 1997, August 4, 1997 and by mail on approximately August 5, 1997.

Meanwhile, on July 24, 1997, Barbara M. Ornellas, R.N., of Defendants' Utilization Review Department, informed Plaintiff by facsimile that Chon's eligibility was being investigated. After conducting its investigation, which allegedly included a review of Plaintiff's own medical records regarding Chon and an interview with Holiday's owner, Defendants discovered that it had issued the policy based on false representations made by Chon. Specifically, Defendants discovered that Chon had concealed two previous brain surgeries on her application, and had never been an active employee of Holiday. Because Defendants had issued the policy on the basis of Chon's false representations, Defendants rescinded both Chon's and Holiday's coverage and denied Plaintiff the reimbursement it sought for the services it had provided to Chon.

On February 4, 1999, Plaintiff filed its Complaint for damages, alleging five separate causes of action: [1]

Count One: Breach of Oral Contract

Count Two: Fraud and Deceit

Count Three: Negligent Misrepresentation

Count Four: Estoppel

Count Five: Quantum Meruit

On March 31, 1999, Defendants filed the instant Motion for Summary Judgment, contending that they are entitled to summary judgment on each of Plaintiff's five claims. Plaintiff filed its Opposition to Defendants' Motion on May 27, 1999. Defendants filed their Reply on June 3, 1999.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

1. This action was originally filed in the Northern District of California, but was transferred to the District of Hawaii because California lacked jurisdiction over Defendants. The Ninth Circuit has held that where venue is transferred for lack of personal jurisdiction, the law of the transferee district must be applied. *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964 (9th Cir.1993). Thus, the court applies Hawaii law to the instant action.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. *But cf., id.,* at 328, 106 S.Ct. 2548 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (original emphasis).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Eisenberg,* 815 F.2d at 1289.

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the nonmoving party. *Id.* These inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the nonmoving party. *Id.*

## DISCUSSION

Defendants move for summary judgment on each of Plaintiff's five claims, and the court addresses each in turn.

### Count One: Breach of Contract

 Plaintiff bases its breach of contract claim on the alleged "oral agreement" that was created on June 18, 1997, when Defendants pre-certified coverage for Chon. At that time, Plaintiff argues that it "agreed to render medical treatment and related services to patient Ye Sun Chon, in exchange for Defendants' agreement to pay for such services by verifying coverage for the medical treatment and related services rendered to Ye Sun Chon." Complaint at ¶ 14. According to Plaintiff, it fulfilled all of its obligations under the agreement, and Defendants breached the agreement when they failed to pay for the medical treatment and services Plaintiff had provided.

Defendants respond that this "oral contract" is not binding, because it is not in

writing and is thus barred by the Statute of Frauds. Haw.Rev.Stat. § 656–1(2) provides:

> No action shall be brought and maintained in any manner in any of the following cases . . . (2) To charge any person upon any special promise to answer for the debt, default, or misdoings of another . . . unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

Defendants assert that because their alleged promise to pay Plaintiff for Chon's treatment was a "special promise to answer for the debt . . . of another," it must be in writing to be enforceable under Hawaii law.

▓ The court disagrees. Hawaii law provides an exception to the Statute of Frauds where the promisor received some benefit in making the promise. In such a case, the Statute of Frauds does not preclude a claim for breach of contract. "Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute." *Castle v. Smith,* 17 Haw. 32, ——, 1905 WL 1410, *5 (Terr.1905). This is true even though "it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." *Id.; see also James D. Swoish, Inc. v. Panda Foods, Inc.,* 2 Haw. App. 679, 639 P.2d 426, 428 (1982) (explaining that the statute of frauds does not apply where the promisor's "primary object in guaranteeing the [debtor's] payment was to secure direct and personal benefits to himself" from the promisee's acts).

In determining whether a promisor's promise to pay was made to advance its own business purposes, Hawaii courts have looked to whether "the debt is that of the promisor or that of the original debtor." *Smith,* 17 Haw. 32, 1905 WL 1410, *4. "If the defendant's promise is original or absolute or primary or independent, as it is variously expressed, and not merely collateral to the obligation of the original debtor, it is not within the statute." *Id.* A key factor courts look to is whether the promisor received a "direct and personal" benefit by making the promise. *See Swoish,* 639 P.2d at 428 (*quoting* Annotation, *Statute of frauds: promise by stockholder, officer, or director to pay debt of corporation,* 35 A.L.R.2d 906, 910–911 (1954)). Thus, the key question for the court is whether Defendants' agreement to provide coverage for Chon's treatment was an independent obligation, made to secure "direct and personal" benefits to Defendants.

Careful review of the facts in this case establishes that Defendants' alleged promises were made to advance their own business purposes. Chon was their insured, and by agreeing to cover her treatment, Defendants were performing the duties imposed upon them by the underlying contract. By contracting with Chon as they did, Defendants agreed to be the primary liable party in the event that Chon received treatment covered by the insurance agreement. Thus, Defendants' agreement to provide payment for Plaintiff's services satisfied their obligations under the insurance contract, thereby meeting the duties of their business relationship.

In *Klag v. Home Ins. Co.,* 116 Ga.App. 678, 158 S.E.2d 444 (1967), the court reached the same conclusion on similar facts. There, an insurance company orally agreed to settle the claims of an injured party who had been injured in an accident with one of its insureds. After the injured party brought suit for breach of the settlement agreement, the insurance company advanced a Statute of Frauds defense. It claimed that because the alleged settlement agreement was the insurance company's promise to pay the debt of another, its insured, and the promise was not in writ-

ing, it was barred by the Statute of Frauds.

In rejecting the insurance company's argument, the court explained that the underlying insurance contract constituted a promise to pay the debt of another, but that the oral promise to settle the insured's claims did not. Rather, the subsequent oral promise to pay was an original undertaking designed to discharge the obligation the insurer owed by virtue of the underlying insurance contract:

> It appears to us that the agreement here used upon was not, on the part of the insurer, a promise to answer for the debt, default or miscarriage by another required by the Statute of Frauds to be in writing. The insurer's contract is the promise to answer for the debt, default, or miscarriage of that insured as provided in the terms of the policy. That contract is in writing.... *The insurer has a financial interest in the claim against the insured* even though it only becomes liable to the third party when legal liability is established against the insured, and where the insurer agrees to settle its potential liability of the insured, *the oral promise by the insurer to settle or pay the claim against the insured is an original undertaking* and need not be in writing.

158 S.E.2d at 451 (emphasis added).

The court agrees that an insurer satisfies a clear business purpose when it complies with its contractual obligations to provide coverage for treatment of its insureds. In so doing, the insurer discharges not only the duty of its insured, but of itself, thereby relieving it of subsequent expenses, including a duty to defend its insured and punitive damages. Moreover, by consistently satisfying its obligations under its insurance contracts, an insurer maintains a positive reputation in the industry, which is crucial to its continuing business success. By orally agreeing to cover Chon's treatment, Defendants were clearly advancing their own business purpose of maintaining the business relationship with its insured and preventing an escalation of costs with Plaintiff.[2] Therefore, Plaintiff's claim for breach of the alleged oral contract is not barred by the Statute of Frauds. Accordingly, Defendants' Motion for Summary Judgment as to Count One is DENIED.

*Count Two: Fraud & Deceit*

■ Plaintiff's second claim asserts that Defendants' pre-certification of Plaintiff's services constituted fraud. Plaintiff's fraud claim rests on its contention that Defendants falsely stated that Chon was covered under Defendants' policy. Plaintiff claims that Defendants knew or should have known that these statements were false at the time they were made.

To state a claim for fraud under Hawaii law, Plaintiff must demonstrate: 1) false representations made by the defendant; 2) with knowledge of their falsity (or without sufficient knowledge to determine whether they were true of false); 3) in contemplation of plaintiff's reliance upon them; and 4) plaintiff's detrimental reliance. *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 837 P.2d 1273, 1288 (1992). Furthermore, under Hawaii law, proof of fraud requires a heightened standard of proof. "The evidence must be clear and convincing to support a finding of fraud." *Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 768 P.2d 1293, 1300 (1989) (*citing Dobison v. Bank of Hawaii*, 60 Haw. 225, 587 P.2d 1234, 1235 (1978) (per curiam)).

In this case, Defendants argue that Plaintiff's fraud claim must fail because it cannot show that Defendants acted with knowledge that the statements were false at the time they were made, or with insufficient knowledge as to their falsehood.

---

**2.** It is of no moment that Defendants allegedly discovered later that Chon had obtained insurance with Defendants through false representations on her application. At the time Defendants orally agreed to cover Chon's treatment, they allegedly had no reason to doubt Chon's eligibility, and thus had the same vested interest in paying her claims as they would in the case of any other insured.

The court agrees. There is no evidence on the record that Defendants knew at the time the pre-certifications were provided that Chon's application contained material falsehoods, and that they would ultimately deny coverage. Defendants certainly had no incentive to misrepresent their intentions; to do so would subject them to unjustified claims and potential litigation. Under these circumstances, a reasonable jury could not conclude by clear and convincing evidence that Defendants knew at the time the statements were made that they falsely represented Chon's eligibility for coverage. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's fraud claim is GRANTED.

*Count Three: Negligent Misrepresentation*

■ Plaintiff's third count asserts that Defendants' statements constituted negligent misrepresentation. Hawaii courts apply the Restatement to claims for negligent misrepresentation. "The material elements of the tort of negligent misrepresentation are described in the Restatement (Second) of Torts (1977) as follows:

§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Shaffer v. Earl Thacker Co., Ltd.*, 6 Haw. App. 188, 716 P.2d 163, 165 (1986) (*citing* Restatement (Second) of Torts § 552 (1977)). Thus, to state a claim for negligent misrepresentation, Plaintiff must establish that 1) Defendants provided information in the course of their business, profession or employment, 2) the information was false, 3) the information was sup-plied as guidance for Plaintiff in deciding whether to provide services to Chon, and Plaintiff justifiably relied on the information, and 4) Defendants failed to exercise reasonable care or competence in obtaining or communicating the information.

■ Plaintiff's claim rests on its contention that Defendants negligently misrepresented that they would provide coverage to Plaintiff for the services provided to Chon. A review of Plaintiff's argument demonstrates that Plaintiff has provided sufficient support for its claim to create a genuine issue of material fact as to whether Defendants negligently misrepresented that they would provide coverage.

First, it is clear that Defendants provided the information in the course of their business. Second, by indicating that they would likely provide coverage to Chon, a statement they later repudiated, the information Defendants provided was arguably false.

Plaintiff has also put forth sufficient evidence to create a fact question as to whether it reasonably relied on Defendants' representations. The comment to the Restatement provides that a reasonable user of commercial information may reasonably expect a supplier of information to "speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says." Restatement (Second) of Torts § 552 cmt. a (1977).

In this case, Plaintiff requested from Defendants information relating to Chon's eligibility, and after receiving Defendants' pre-certification, performed the necessary services. In the pre-certification, Defendants provided extremely precise information regarding Chon's coverage: 1) that Chon was insured and covered by Defendants; 2) that Chon's policy became effective on April 1, 1997; 3) that Chon had a $2 million lifetime maximum benefit; 4) that Chon had a $100 deductible; 5) and that Chon had an Out–of–Pocket co-payment of $1,500. Defendants also indicated in their response that pre-certification of

coverage was "required" before services could be provided. Given both the volume and the specificity of the information provided by Defendants regarding Chon's coverage, a reasonable jury could certainly conclude that Plaintiff's reliance on Defendants' representations was reasonable.

Finally, there is also sufficient evidence to create a triable issue regarding whether Defendants failed to exercise reasonable care. In a strikingly similar case, the Arizona Supreme Court held that a fact issue existed as to whether an insurer had acted unreasonably in verifying coverage. *See St. Joseph's Hosp. & Medical Center v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808 (1987). There, the insurer initially indicated to a health care provider that it would provide coverage for its insured, and later rescinded coverage when it discovered that the insured had made false representations in applying for the policy. In concluding that there was sufficient evidence that the insurance company had failed to exercise reasonable care, the Court explained:

> [The insured's] representations as to height, weight, and doctors consulted (the basis of United Chambers' recission) were existing facts, ascertainable by reasonable investigation. We hold that a supplier of commercial information must exercise reasonable care and competence in ascertaining accuracy of the facts upon which the information is based.

*St. Joseph's*, 742 P.2d at 816. The court also relied on the fact that the insurer did not require the insured to submit to an examination when he applied for coverage, and did not begin its investigation of his eligibility until after he submitted claims. On these facts, the Court concluded that there was sufficient evidence of unreasonableness to preclude summary judgment.

In this case, Defendant could have obtained accurate information regarding Chon's eligibility before it pre-certified Chon's coverage to Plaintiff. Defendant chose not to investigate the facts underlying Chon's eligibility until after Plaintiff submitted Chon's claims, and more importantly, after Defendants had pre-certified Chon's treatment. In response to Plaintiff's inquiry, Defendants represented that Chon was an insured and indicated no concerns or questions surrounding Chon's eligibility for coverage. Thereafter, apparently questioning Chon's eligibility, Defendants launched a full investigation. Once it discovered that Chon had provided false information on her application, Defendants refused to reimburse Plaintiff for the services Defendants had effectively authorized Plaintiff to perform. On these facts, a fact finder could certainly conclude that Defendants failed to "exercise reasonable care and competence in ascertaining accuracy of the facts upon which the information is based."

Accordingly, the court concludes that Plaintiff has alleged sufficient facts to support its claim that Defendants' pre-certifications of coverage constituted negligent misrepresentations. Therefore, Defendants' Motion for Summary Judgment on Count Three is DENIED.[3]

*Count Four: Estoppel*

Plaintiff also alleges that Defendants should be estopped from denying coverage, because their representations constituted a promise to provide coverage, and Plaintiff reasonably relied to its detriment on Defendants' statements. Defendants respond that Plaintiff's estoppel claim must fail, because it has failed to show that Defendants "willfully caused it erroneously to believe a certain state of things, and that Plaintiff reasonably relied on this erroneous belief to its detriment."

---

3. Defendants also argue that Plaintiff's negligent misrepresentation claim must fail because the claim is really a breach of contract claim disguised as a claim for misrepresentation, and is thus barred by the Statute of Frauds. As the court has already concluded, the Statute of Frauds does not bar Plaintiff's claim for breach of contract, and thus clearly cannot bar Plaintiff's claim for negligent misrepresentation.

While Defendants cite numerous authorities in Hawaii law, none of the cited authorities supports Defendants' assertion that an estoppel claim requires a showing that Defendants "willfully caused" Plaintiff's detrimental reliance. In fact, the principal authority relied upon by Defendants simply states that "the party invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." *AIG Hawai'i Ins. Co., Inc. v. Smith,* 78 Hawai'i 174, 891 P.2d 261, 266 (1995) (internal citations and quotation marks omitted); *see also State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Tel. Co.,* 81 Hawai'i 235, 915 P.2d 1336, 1344–45 (1996) (reiterating the same test). Thus, to establish a claim for equitable estoppel under Hawaii law, Plaintiff must demonstrate that 1) Defendants made a representation to Plaintiff, either through words or conduct, 2) Plaintiff relied to its detriment on Defendant's representation, and 3) Plaintiff's reliance was reasonable.

The court has little trouble in this case concluding that Plaintiff has alleged sufficient facts to support their claim for equitable estoppel. Pre-certification clearly constitutes a "representation" to Plaintiff regarding Chon's coverage. Furthermore, Plaintiff relied on Defendants' representations in providing the necessary treatment to Chon, and this reliance eventually proved detrimental when ultimately Defendants denied coverage.

Finally, as the court explained in its discussion of Plaintiff's negligent misrepresentation claim, there is sufficient evidence to create a factual dispute as to whether Plaintiff reasonably relied on Defendants' misrepresentations. "What is reasonable conduct in a particular case is usually to be resolved by the jury." *St. Joseph's,* 742 P.2d at 815 (*citing* Restatement (Second) of Torts § 552 comment e) ("It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. The question is one for the jury, unless the facts are so clear as to permit only one conclusion"). Plaintiff has clearly submitted sufficient information as to their reasonable reliance to create a factual dispute, precluding summary judgment.

Accordingly, because the court finds that Plaintiff has alleged sufficient facts on each of the elements of equitable estoppel, Defendants' Motion for Summary Judgment on Count Four is DENIED.

### Quantum Meruit

Finally, Plaintiff argues that it is entitled to recover against Defendants under a theory of quantum meruit. The basis for recovery under quantum meruit is that a party has received an uncompensated benefit from another that is unjust for him to retain. *See Maui Aggregates, Inc. v. Reeder,* 50 Haw. 608, 446 P.2d 174, 176 (1968). Under Hawaii law, whether the Defendants received some benefit in the exchange is key. *See Booker v. Midpac Lumber Co., Ltd.,* 2 Haw.App. 569, 636 P.2d 1359, 1362 n. 5 (1981), *rev'd on other grounds,* 65 Haw. 166, 649 P.2d 376 (explaining that "quantum meruit primarily involves a determination of the benefit conferred").

In this case, there is no evidence on the record that Defendants received any benefit in pre-certifying Chon's treatment. On the contrary, in so doing, Defendants have arguably suffered much greater expense than they would have otherwise. Accordingly, because Plaintiff has failed to demonstrate that Defendants received any benefit in the alleged exchange, a fundamental requirement to a sustain a claim under quantum meruit, Defendants' Motion for Summary Judgment on Count Five is GRANTED.

### CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part

Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.