CEDARS SINAI MEDICAL
CENTER, Plaintiff,

v.

MID–WEST NATIONAL LIFE INSUR-
ANCE COMPANY OF TENNESSEE,
and Alliance for Affordable Services,
Defendants.

No. CV 98–9708–RAP.

United States District Court,
C.D. California.

Feb. 2, 2000.

Alyssa Brooke Klausner, Joy Young Stephenson, Burbank, CA, M. Joy Young Stephenson, Stephenson Acquisto & Colman, Burbank, CA, for Plaintiff.

Margaret Levy, Becky J. Belke, Manatt Phelps & Phillips, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF ALL CLAIMS

PAEZ, District Judge.

## I.

### *Introduction*

This action involves the medical insurance industry practice of "pre-certification," whereby a medical insurer confirms to a health care provider that an insured's coverage is in effect prior to treatment of the insured by the health care provider. Pre-certification normally consists of two parts: a verification of coverage and a certification that the proposed treatment is medically necessary.

Plaintiff Cedars–Sinai Medical Center ("Cedars") brought this action for damages against defendants Mid–West National Life Ins. Co. of Tennessee ("Mid–West") and Alliance for Affordable Services ("Alliance") alleging nonpayment of claims for services provided to Mid–West's insured, Daniel Bernheim ("Bernheim") after Mid–West pre-certified coverage to Cedars. Cedars asserts claims for breach of oral contract, fraud and deceit, negligent misrepresentation, estoppel, and quantum meruit in its complaint. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332.

Pending before the court are Mid–West's and Alliance's motions for summary judgment on all claims. Mid–West contends that, although Mid–West pre-certified coverage of Bernheim to Cedars, it is not now liable for any of Bernheim's medical treatment because it has since discovered that Bernheim made material misrepresentations in his insurance application and rescinded his policy. Alliance contends that it took no part in Mid–West's pre-certification of coverage to Cedars and is not liable for any resultant damages.

Cedars argues that Mid–West's pre-certification of coverage prior to any investigation into the validity of Bernheim's application imposes liability on Mid–West for services rendered by Cedars to Bernheim. Cedars claims that Alliance was involved in the filling out and filing of Bernheim's insurance application and had a duty to investigate its contents. Because the information on his application is causally connected to pre-certification and Mid–West's failure to pay, Cedars contends that Alliance is also liable for payment of Bernheim's medical bills.

Upon full consideration of the written and oral arguments, the Court hereby GRANTS Mid–West's motion for summary judgment as to the breach of oral contract, fraud, and quantum meruit claims, DENIES Mid–West's motion for summary judgment as to the negligent misrepresentation and estoppel claims, and GRANTS Alliance's motion for summary judgment in full.

## II.

### *Material Facts* [1]

Alliance is a membership association for individuals which provides access to cost-saving benefits, including group health care coverage. Alliance is the policyholder of a group policy (the "policy") issued to it by Mid–West, which provides coverage to eligible Alliance members who choose to apply for and who are approved for coverage by Mid–West. Alliance claims that it does not perform any of the administrative functions pertaining to coverage or benefits under the policy. All underwriting, pre-certification, and claims handling is performed by Mid–West.

On May 16, 1997, Bernheim applied, through Alliance, for health insurance coverage under a group policy issued by Mid–West. Bernheim was aided in filling out his application form by Steven Pato

1. The statement of material facts is drawn from the parties' statements of uncontrovert-

ed facts and genuine issues as required by Local Rule 7.14.

("Pato"), an agent of both Alliance and Mid–West.

In his application, Bernheim represented that he had never had symptoms or been treated for alcoholism, high blood pressure, or any disorder of the stomach, intestines, gallbladder, liver or pancreas; that he had not had any medical advice or hospitalizations within the last five years; that he had never had his driver's license suspended or revoked nor had he received any citations for driving under the influence; and that he was not presently taking any medications. When asked for his doctor's name, he responded, "None." He further represented that all statements and answers in the application were true.

Solely on the basis of Bernheim's representations, Mid–West issued him a certificate of insurance with an effective date of May 28, 1997. This certificate contained an incontestability clause which stated that fraudulent misstatements in the application could be used to void coverage for a period of two years. In conjunction with the certificate, Mid–West supplied Bernheim with an insurance card to present to health care providers.

On October 3, 1997, Bernheim was admitted to the emergency room of Cedars, where he was diagnosed with pancreatitis, which was a direct result of alcoholism. Soon thereafter, he was transferred to Cedar's Intensive Care Unit.

Shortly after admission, Bernheim signed a form entitled "Conditions of Admission," that stated that Bernheim would have primary financial responsibility for all charges he incurred and that he would be obligated to pay for all services not covered by insurance.

At this time, Bernheim presented his Mid–West insurance card to Cedars. The card provides phone numbers that health care providers can call to verify coverage and eligibility. Printed on the card is the following proviso:

NOTICE TO HOSPITALS: Call claims hotline for verification of coverage.

This card validates that coverage was in force on the Member listed on the reverse side of the card at the time this card was issued. There is no guarantee that coverage is currently in force nor is payment of benefits guaranteed in any way with or without verification of coverage by the Insurance Company.

On October 6, 1997, Cedars' employee Calvin Brass ("Brass") called Mid–West and spoke with Sharon Ashley ("Ashley"). Brass informed her that Bernheim had been admitted to Cedars on October 3, 1997 with pancreatitis. Ashley gave Brass the following information: that the effective date of Bernheim's coverage was May 28, 1997; that premiums were paid through May 28, 1998; that the deductible was $1000; that there was a $1000 stop loss for services provided within the network; and that out-of-network benefits were payable at a rate of 60% of the reasonable and customary charge.

Mid–West claims, but Cedars denies that Ashley read the following disclaimer to Brass:

This is not a guarantee of payment. It is understood that there may be health conditions excluded by Riders. There is a two year contestable period and a preexisting conditions limitation, and other limitations and exclusions which may apply.

Both Brass and Ashley filled out verification forms during or immediately following the conversation. Ashley states that she does not specifically remember reading the disclaimer, but that it is her common practice to read the disclaimer and then initial the verification form to verify that she has done so. However, Ashley did not so initial the verification form which she filled out in connection with her conversation with Brass. Brass states that Ashley did not read the disclaimer and his verification form does not state that he was informed of any disclaimers or limitations to Bernheim's policy.

On October 7, 1997, Mid–West sent to Cedars a letter regarding Bernheim's treatment, which was also sent to Bernheim and his treating physician. The letter states,

> This certification does not guarantee that charges for particular procedures or services will be approved for payment. All provisions of this Policy, including pre-existing limitations, applicable exclusions as well as premium payment, will be considered when processing a claim for benefits.

Cedars denies ever receiving this letter.

Bernheim was in Cedars' Intensive Care Unit until October 29, 1997, and was released from Cedars on November 3, 1997.

On October 21, 1997, Mid–West received its first claim from Cedars regarding Bernheim's treatment. Mid–West commenced a routine claim investigation and requested Bernheim's medical records from Cedars.

On December 30, 1997, Mid–West received the requested medical records from Cedars. In this paperwork, Mid–West learned that: Bernheim had admitted himself to Cedars for alcohol-related problems three days before applying for coverage with Mid–West; he had a 10–15 year problem with alcohol abuse; he had consulted with a doctor four times during the four months prior to applying for insurance; he had high blood pressure on February 7, 1997; and he had been taking Prozac, Xanax and Ambien.

Mid–West's in-house medical director, Dr. Leigh Galatzan, and its underwriting department reviewed the medical records. Mid–West determined that, if Bernheim had been truthful about his medical history, it would not have offered him insurance coverage under the group policy. On May 13, 1998, Mid–West sent Bernheim a letter stating that his coverage was rescinded and returned all premium payments to him. Mid–West denied Cedars' claims for payment of treatment and services rendered to Bernheim.

A Cedars representative, Bernadette Lodge Lemon, met with Bernheim to discuss his contractual duty to pay for medical care and treatment. Bernheim provided documentation to Cedars showing his inability to pay the $478,644.50 bill. Bernheim has since filed for bankruptcy.

## III.

### *Discussion*

### A. Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse

party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita,*

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### B. Mid–West's Motion for Summary Judgment

#### 1. Breach of Oral Contract

██ Cedars alleges that a contract was formed during the telephone conversation between Ashley and Brass. According to Cedars, Ashley's verification of coverage was a promise by Mid–West to pay for Bernheim's covered treatment, which resulted in a binding contract. This claim fails, because, as a matter of law, no such contract was formed.

██ A contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. Cal. Civ.Code § 1550. Cedars' allegation fails for lack of consent, or mutual assent, as the parties did not agree to be bound. *Apablasa v. Merritt & Co.,* 176 Cal.App.2d 719, 726, 1 Cal.Rptr. 500 (1959). It is clear that, during the disputed conversation, neither party either intended or manifested an intent to form a contract. In California, a party's intent to contract is judged objectively, by the party's outward manifestation of consent. *Weddington Productions, Inc. v. Flick,* 60 Cal.App.4th 793, 811, 71 Cal.Rptr.2d 265 (1998). The undisputed facts do not establish that Mid–West intended to form a contract during the conversation, and Cedars offers no evidence that Mid–West's conduct can be viewed objectively as exhibiting an intent to contract. Cedar's own expert witness opines that, within the medical insurance industry, an insurer's verification is not the same as a promise to pay. Deposition of Regina Wallin, 28:3–29:20, Exhibit D to Declaration of Becky Belke. Given Cedar's own evidence that a verification cannot objectively be interpreted as consent to contract, Mid–West's verification cannot be construed as a binding contractual agreement. Neither party intended to be contractually bound by the conversation, so, as a matter of law, no contract was formed. No reasonable trier of fact could conclude otherwise. Accordingly, Mid–

West is entitled to summary judgment on this claim.

## 2. Negligent Misrepresentation

Cedars argues that Mid–West negligently misrepresented that Bernheim's treatment was covered under its policy. Thus, because Mid–West did not investigate the validity of Bernheim's application before it certified coverage to Cedars, Cedars contends Mid–West had no reasonable basis for believing that it would, in fact, pay for his treatment. Mid–West responds that Bernheim's policy was in place at the time it verified coverage, so it did not make a false representation to Cedars.

Two recent cases with similar facts have recognized that a medical insurer could be liable for negligently misrepresenting that the insured's medical treatment was covered under a policy of insurance. In *UCSF–Stanford Health Care v. Hawaii Management Alliance Benefits & Services, Inc.*, 58 F.Supp.2d 1162 (D.Haw.1999), a hospital sued an insurance company when the insurance company refused to pay a patient's fees despite its pre-certification of coverage. The patient had stated on her insurance application that she was an employee of Holiday Shoe Repair and that she was not at that time undergoing any treatment. In reliance on these statements, the insurer added her to Holiday's list of insureds. Two months later, the hospital contacted the insurer to obtain authorization for medical treatment and confirmation that the treatments were medically necessary. In two phone calls and one fax, the insurer pre-certified coverage for the medical treatment. In the fax, the insurer included a disclaimer stating that, "Pre–Certification is not a guarantee that charges are covered under the plan." Shortly after receiving the certification, the hospital performed two surgeries on the insured and submitted interim patient bills to the insurer. Upon receipt of the first bill, the insurer began an investigation into its insured's eligibility. After reviewing the hospital's own medical records and interviewing Holiday's owner, the insurer learned that its insured had concealed two previous similar surgeries and had never been an active employee of Holiday. The insurer rescinded the insured's coverage and denied reimbursement of the hospital's claims. The hospital sued, alleging the same five causes of action that Cedars raises here.

■ Applying Hawaii law, the district court denied the insurer's motion for summary judgment of the negligent misrepresentation claim. Hawaii law defines negligent misrepresentation using the definition of the Restatement (Second) of Torts, § 552, which is similar to the negligent misrepresentation doctrine recognized in California Civil Code sections 1572 and 1710 and cases such as *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal.App.3d 388, 402, 264 Cal.Rptr. 779 (1989). The district court found that the hospital had raised three genuine issues of material fact. First, the court found that the insurer's pre-certification was "arguably false" at the time it was made. Second, because the pre-certification was comprehensive and provided detailed information as to the insured's policy, the court held that a reasonable jury could conclude that the hospital's reliance was reasonable. Third, the court found that the insurer could have discovered its insured's false statements before it pre-certified her treatments, but chose not to investigate until after the hospital submitted its claims. With this assessment of the evidence, the district court found a jury could conclude the insurer failed to exercise reasonable care in making its representations. *Id.* at 20–3, 264 Cal.Rptr. 779.

In *St. Joseph's Hospital and Medical Center v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808 (1987), a hospital sued an insurer after the insurer denied claims for a patient whose coverage it had earlier certified. The basic facts mirror those of *UCSF–Stanford* and those presented here: an insurer issued a policy based on an

application containing false information, the insured entered a hospital for necessary treatment, the insurer pre-certified treatment, the hospital performed the authorized treatment, the insurer investigated the insured's eligibility after it received a claim, the insurer discovered the truth, rescinded the policy, and refused to pay the claims. The insurer's actions in *St. Joseph* were a bit more egregious than those in *UCSF–Stanford* or here because it never provided the hospital with any information on limitations or conditions on the policy, and also because the patient was readmitted to the hospital after the insurer began its investigation, but the insurer continued to certify coverage without warning the hospital of an on-going investigation.

The Arizona Supreme Court upheld a jury verdict on plaintiff's negligent misrepresentation claim. Arizona law also adopts the Restatement's definition of negligent misrepresentation. In upholding the jury's verdict, the court explained:

> [The insurer] did not require [the applicant] to submit to a medical examination prior to issuance of the policy, and did not investigate the accuracy of his application until after a claim was presented. From the evidence presented, the jury may well have concluded that [the insurer] should not have held itself out as having the ability to provide coverage information by inviting hospitals to telephone to verify coverage, if it knew that its underwriting practices did not place it in a position to respond accurately to a particular request.

*Id.* at 314, 742 P.2d 808. The court also found that a jury could have found that the hospital's reliance on the pre-certifications was reasonable given the number of times it called and the insurer's failure to disclose its investigation or any other conditions or limitations on the policy. *Id.* at 316, 742 P.2d 808.

■ In California, negligent misrepresentation is defined by the fraud and deceit statutes (Cal. Civ.Code §§ 1572, 1710) and common-law principles. The cause of action has six elements: (1) The defendant must have made a representation as to a past or existing material fact, (2) which was untrue, (3) which, regardless of the defendant's actual belief, was made without any reasonable grounds for believing it was true, and (4) which was made with the intent to induce the plaintiff to rely upon it; (5) the plaintiff justifiably relied on the statement, and (6) plaintiff sustained damages. *Gagne v. Bertran,* 43 Cal.2d 481, 487–8, 275 P.2d 15 (1954); *Continental Airlines, Inc. v. McDonnell Douglas Corp.,* 216 Cal.App.3d 388, 402, 264 Cal. Rptr. 779 (1989).

Under the Restatement, negligence misrepresentation consists of the following elements: (1) defendants provided information in the course of their business, (2) which was false; (3) defendants failed to exercise reasonable care in providing the information; (4) the statement was made with the intent that the plaintiff would rely on the information, and (5) the plaintiff justifiably relied. *UCSF–Stanford,* 58 F.Supp.2d at 1169. The cause of action based upon the Restatement varies from California's in one significant respect. First, the representation in California must be "as to a present or existing fact" whereas the representation under the Restatement must be made "in the course of business." This distinction is not relevant here. The alleged misrepresentations here, in *St. Joseph* and *UCSF–Stanford* were made both in the course of the defendant's business and as to a present and existing fact. Thus, the Court's analysis of similar factual allegations and legal issues is helpful in resolving Cedars' negligent misrepresentation claim. *See, e.g., Bily v. Arthur Young & Co.,* 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992) (relying on an aspect of the Restatement definition to decide a negligent misrepresentation case).

■ California's first element requires that Mid–West made a statement as to a

present or existing fact. In the phone calls and letter, Mid–West certified that, at that time, Bernheim's policy was in effect and that the treatments were medically necessary. Both were existing facts, so this element is satisfied. Whether they were material, however, is a genuine triable issue of fact.

■ Mid–West argues that Cedars cannot meet the second element because, at the time it certified Bernheim's treatment, its representations were true. According to Mid–West, Bernheim was listed as one of its insureds when it pre-certified coverage to Cedars. This representation, however, was not true. Bernheim was simply not eligible for coverage and Mid–West subsequently declined to make any payments for Bernheim's treatment. To argue that because Bernheim was listed as one of its insureds at the time of its certification and therefore its representation was true is disingenuous at best. This point is emphasized by Mid–West's subsequent rescission of Bernheim's policy. By rescinding Bernheim's policy, Mid–West took the position that Bernheim's policy was unenforceable from the outset. Indeed, a rescinded insurance policy is viewed as never having existed. *Imperial Cas. & Indem. Co. v. Sogomonian,* 198 Cal.App.3d 169, 182, 243 Cal.Rptr. 639 (1988). "[A] rescission effectively renders the policy totally unenforceable from the outset, so that there never was any coverage, and therefore no benefits are payable." *Id.* Thus, Mid–West's pre-certification of Bernheim's coverage was not true and plaintiff satisfies this element of the negligent misrepresentation test.

■ Mid–West argues that Cedars cannot meet the third element of its negligent misrepresentation claim: Mid–West was reasonable in believing its representations as to coverage were true because they were based on Bernheim's application. An insurer has a "right to rely" on information provided in an insurance application. *See, Robinson v. Occidental Life Ins. Co.,* 131 Cal.App.2d 581, 585, 281 P.2d 39 (1955).

Because insurers can rely on the information in an application, Mid–West argues its reliance on Bernstein's application in making the verification was reasonable.

■ This "right to rely" which Mid–West points to is not as broad as Mid–West implies. This right, as recognized by *Robinson* and other cases, holds only that an insurer can rely on the application vis a vis the applicant. *See also, Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973). These cases do not extend any such "right to rely" to third parties, who had no knowledge of nor liability for information provided in the application. Furthermore, there is a difference between relying on information and believing it to be true. If Mid–West did not necessarily believe the information in Bernheim's application—regardless of whether they could legally rely on that information in certain situations—they may have made negligent misrepresentations to Cedars.

A reasonable jury could find that Mid–West was negligent in making representations to a third party where the only basis for the representations is information provided by an unknown applicant. Mid–West relied solely on Bernheim's application. It could have investigated the contents of the application before it certified coverage to Cedars, but it did not. It pre-certified coverage without having investigated and in fact did not undertake any investigation until it received Cedars' claim. Both the *UCSF–Stanford* and the *St. Joseph's* courts, on similar facts, concluded that a reasonable jury could find the insurer's representations were negligent. The Court cannot say that, as to pre-certifications made to third parties, an insurer's reliance upon an uninvestigated application is, as a matter of law, a reasonable basis for belief in the truth of its contents. A genuine issue of fact exists as to this element.

Cedars also satisfies California's fourth element because Mid–West made its certi-

fication with the intent that Cedars rely. Mid–West knew that Cedars would go forward with Bernheim's treatment after receiving confirmation of coverage and the medical necessity of the treatment.

A genuine issue of material fact exists as to the fifth element. Whether or not Cedars relied on Mid–West's pre-certification and, if so, whether such reliance was justified are questions of fact that a jury must decide. Mid–West argues that Cedars did not in fact rely on the pre-certification: first, Cedars did not call Mid–West until three days after it admitted Bernheim; and second, under California law, Cedars could not have moved Bernheim to a different treatment facility until his condition stabilized. The first fact could affect liability for the first three days of treatment. The second fact could affect liability for the period before Bernheim stabilized. Mid–West presented the testimony of its in-house medical director, Dr. Leigh Galatzan, that Bernheim stabilized on October 31, 1999. Cedars offered no evidence on the matter. The testimony of Dr. Galatzan, however, does not show that Bernheim did not stabilize earlier. A genuine issue exists as to when Cedars could have moved Bernheim to a different facility.

Whether or not Cedars was justified in relying on the certification is similarly in dispute. Even assuming that Mid–West's representative did not read a disclaimer on the phone, Mid–West did write disclaiming language on Bernheim's card and on the pre-certification letter it sent to Cedars. Furthermore, Cedars is a large medical establishment with presumably much expertise in dealing with insurance companies. In fact, its own witness testified that a pre-certification is not "money in the bank." The *UCSF–Stanford* and the *St. Joseph's* courts held that a jury could find that a health care provider's reliance on the type and amount of information as Mid–West provided to Cedars was justified. This issue is also best decided by a jury.

If Cedars justifiably relied on Mid–West's pre-certification, then it can meet the sixth element of damages.

Because genuine issues of material fact exist as to whether Mid–West had a reasonable basis for believing the truth of its representations and whether Cedars justifiably relied on those statements, the Court denies Mid–West's motion for summary judgment as to this claim.

### 3. Estoppel

■ Cedars argues that Mid–West should be estopped from denying the existence of Bernheim's insurance policy.

■ The estoppel cause of action is quite similar to that of negligent misrepresentation. The essential elements to support an estoppel claim are: (1) a representation of material fact by defendant, (2) with knowledge, actual or virtual, of the true facts, (3) to a party actually or permissively ignorant of the truth, (4) with the intention, actual or virtual, that the other party act upon it, and (5) the other party was induced to act. *San Diego Municipal Credit Union v. Smith,* 176 Cal.App.3d 919, 222 Cal.Rptr. 467 (1986). Given the similarity of the elements, it is not surprising that both the *UCSF–Stanford* and the *St. Joseph's* courts also allowed the estoppel causes of action to go forward.

Following the analysis of the negligent misrepresentation claim, the Court finds that the same genuine issues of fact exist as to the estoppel claim. As to the second element, a jury could find that knowledge of the truth should be imputed to Mid–West because it had the ability to investigate before verifying coverage but failed to do so. As to the fifth element, a jury could find that Cedars was induced to act upon Mid–West's certification.

■ Mid–West argues that it should not be estopped from denying coverage to Cedars because Cedars was, in fact, the party in the best position to know that Bernheim had recently been hospitalized and that Bernheim would probably be un-

able to pay. For example, in its investigation, Mid–West relied on information from Cedars to conclude that Bernheim lied on his application. Mid–West therefore argues that Cedars was in the best position to know that Bernheim had lied on his application and that his coverage would be in dispute. This argument is unavailing because, even if Cedars knew the alleged facts, Cedars still could not have known what Bernheim stated in his application. Cedars may have held information which would have established that Bernheim lied on his application, but without knowledge of the application itself, Cedars could not know of any discrepancies. Mid–West does not allege that Cedars had a copy of Bernheim's application. As such, Cedars was not in the best position to know that Bernheim's application contained false information or that his coverage would be disputed.

Because genuine issues of fact exist as to two elements of the cause of action for estoppel, the Court denies Mid–West's motion for summary judgment on this claim.

### 4. Fraud and Deceit

 Cedar's claim for fraud and deceit is without merit because Cedars offers no evidence that Mid–West did not, at the time it certified Bernheim's coverage, intend to pay for his treatment. A suit for fraud and deceit will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise. *Tarmann v. State Farm Mutual Auto. Ins. Co.*, 2 Cal.App.4th 153, 159, 2 Cal.Rptr.2d 861 (1991). One court has stated, "something more than nonperformance is required to prove the defendant's intent not to perform his promise . . . if plaintiff produces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Magpali v. Farmers Group, Inc.*, 48 Cal. App.4th 471, 481, 55 Cal.Rptr.2d 225 (1996).

Because Cedars has failed to show a triable issue of fact as to Mid–West's intent at the time it certified coverage of Bernheim's claims, Mid–West is entitled to judgment as a matter of law. Accordingly, Mid–West's motion for summary judgment as to this claim is GRANTED.

### 5. Quantum Meruit

 Cedars' claim for quantum meruit also lacks merit because Cedars did not treat Bernheim at Mid–West's request. The elements of quantum meruit are: (1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid. *Haggerty v. Warner*, 115 Cal. App.2d 468, 475, 252 P.2d 373 (1953). Cedars offers no evidence that Mid–West requested Cedars to treat Bernheim, but it cites case law for the proposition that a defendant's request can be implied from the services performed. *McFarland v. Holcomb*, 123 Cal. 84, 86, 55 P. 761 (1898). This argument does not apply to these facts. It is clear that Bernheim presented himself to Cedars with the intention of acquiring treatment. Bernheim requested treatment, not Mid–West. Because Mid–West did not request, either expressly or impliedly, that Cedars treat Bernheim, it is not liable to Cedars under quantum meruit theory. Mid–West's motion for summary judgment as to this cause of action is GRANTED.

### C. Alliance's Motion for Summary Judgment

#### 1. Alliance Is Not Responsible for the Pre–Certification

All of Cedars' claims against Mid–West and Alliance stem from the pre-certification. Because Alliance was not involved in the pre-certification, either directly or through an agent, it is not liable for any injuries arising from Mid–West's representations.

### a. Alliance Was Not Involved in the Pre–Certification

■ The facts are undisputed that Alliance did not take part in any of the pre-certification process. It did not provide Bernheim with the insurance card "inviting him to call" Mid–West, it did not field the phone call from Cedars, and it did not send the pre-certification letter to Cedars. It also was not involved in the authorization that the treatment was medically necessary.

A material issue for the negligent misrepresentation and estoppel claims is the reasonableness of Mid–West's certification of Bernheim. The essential aspect of this issue is Mid–West's reliance on Bernheim's application. Because Alliance was involved in obtaining Bernheim's application, and because Mid–West relied on the application in pre-certifying Bernheim's treatment, Cedars claims, Alliance is just as liable as Mid–West for making the pre-certification.

This argument does not successfully tie Alliance to the pre-certification. The main issue is whether Mid–West was reasonable in solely relying on the application. Any role that Alliance played in completing Bernheim's application is not material to this inquiry. The reasonableness inquiry looks to what Mid–West did and should have done to assure itself of the truth of its statements. It starts with the pre-certification and looks backward at Mid–West's actions which led up to it. Cedars argument is not persuasive because it looks at the events in a causal chain, starting from the application and moving forward. The critical inquiry focuses on Mid–West, not Alliance.

### b. Agency

■ Cedars claims that Pato acted as an agent of both Alliance and Mid–West, and seeks to prove that Alliance was an agent of Mid–West. Cedars argues that Alliance's relationships with Pato and Mid–West create liability for the actions of both.

The argument that Alliance is liable for Pato's actions is unavailing here. First, no liability for the pre-certification can be based on Pato's role in the application process, for the points noted above. It is simply irrelevant. Second, Cedars claims that Pato should have investigated the statements made by Bernheim in his application. To the extent there was a duty to investigate the application, it was held by Mid–West, not Pato, and furthermore, the reasonableness inquiry looks to whether the application should have been investigated prior to making the verification, not whether it should have been investigated at the time of the application.[2]

■ The argument that Alliance was an agent of Mid–West is not relevant. We can assume, arguendo, that Alliance acted as Mid–West's agent. Indeed, it is well recognized that third-party administrators of group insurance policies are agents of the insurer. *See, e.g., Elfstrom v. New York Life Insurance Company,* 67 Cal.2d 503, 512, 63 Cal.Rptr. 35, 432 P.2d 731 (1967). However, this agency relationship is used to hold the insurer liable for acts of the administrator, and not vice versa. *See, e.g., Amberg v. Bankers Life Company,* 3 Cal.3d 973, 979, 92 Cal.Rptr. 273, 479 P.2d 633 (1971). Thus, if Mid–West is liable to Cedars, any agency relationship between Alliance and Mid–West would not make Alliance liable as well.

2. Cedars makes much of a letter which Pato wrote to a Mid–West claims investigator stating that Bernheim's brother told Pato that Bernheim had previously been in an alcohol treatment facility. This letter is not helpful because Pato does not remember when he received this information and guessed that it was "several months" after the policy was issued. Perhaps more importantly, Cedars does not allege that Pato ever knew that Bernheim had entered the hospital or that Pato had any duties to Mid–West beyond the taking and filing of applications.

Because the purported basis for holding Alliance liable for Bernheim's medical bills is without merit, Alliance is entitled to summary judgment on all claims.

## 2. A Rule 56(f) Continuance for Further Discovery Is Not Warranted

 Cedars asks the Court to postpone ruling on this motion until it has conducted more discovery.

 Rule 56(f) provides that when an opposing party, "cannot for reasons stated present by affidavit facts essential to justify the party's opposition," the court can deny the motion for summary judgment or order a continuance to allow the necessary discovery. Fed.R.Civ.P. 56(f). This rule is intended to prevent a movant from using a premature motion to push an opponent out of court. *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548.

 Yet an opposing party cannot hide behind this rule merely by claiming a need for additional discovery. To successfully invoke the benefits of Rule 56(f), an opposing party bears the burden of showing: (1) facts that will be discovered (2) that can raise a material issue, and (3) the likelihood that the evidence exists. *VISA International Service Assoc. v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir.1986). "Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir.1991).

### a. Agency

Cedars asks for time in which to depose Jan Blackmon, an employee of Alliance, allegedly to investigate Alliance's agency relationships with both Pato and Cedars. Because neither of these alleged agency relationships is pertinent to material issues, the Court will not further delay this motion to allow discovery on this issue.

### b. Post–Claims Underwriting

Cedars states that Alliance has refused to answer interrogatories relating to complaints made and actions taken against Alliance relating to post-claims underwriting. Cedars seeks to show whether Alliance had knowledge of Mid–West's practices involving post-claims underwriting. Cedars asks the Court to either deny Alliance's motion or continue the hearing until Alliance provides this information.

Cedars has not alleged any facts, let alone offered any evidence, which support this assertion. As such, it appears to be "the object of pure speculation." *Terrell v. Brewer*, 935 F.2d at 1018. This request does not meet the strict requirements of Rule 56(f) and is therefore denied.

## IV.

### *Conclusion*

Mid–West's motion for summary judgment as to the negligent misrepresentation and estoppel causes of action is DENIED because genuine issues of material fact exist as to the reasonableness of Mid–West's belief in the truth of its representations and as to whether Cedars justifiably relied on the representations. Mid–West's motion for summary judgment as to the quantum meruit, breach of oral contract, and fraud and deceit causes of action is GRANTED and Alliance's motion for summary judgment is GRANTED in full. A final judgment in favor of Alliance will not be entered until the remaining claims against Cedars have been resolved.

**IT IS SO ORDERED.**